## COTTON et al. v. McCLENDON.

No. 17277.   Opinion Filed Sept. 13, 1927.

Rehearing Denied Nov. 22, 1927.

(Syllabus.)

**1. Appeal and Error—Review—Necessity for Motion for New Trial Though Evidence Uncontroverted.**

Where a case is tried upon documentary evidence and oral testimony, the law does not dispense with the necessity of a motion for a new trial where it is sought to present the case to this court for a review. That the documentary evidence and oral testimony is not controverted, does not change the rule that it is evidential in its nature and from which material ultimate facts may be inferred, but in regard to which there is no agreement.

**2. Indians—Enrollment Record as Conclusive Evidence of Exact Age.**

Under the Act of Congress of May 27, 1908, chapter 199, 35 Stat. 313, providing that the enrollment record of the Commissioner to the Five Civilized Tribes should be conclusive evidence as to the age of an enrolled citizen, the enrollment record giving the age of an Indian as four years in 1902 and specifically finding that he was born on July 6, 1898, is conclusive that he reached his majority on July 6, 1919.

**3. Indians—Invalidity of Deed by Minor.**

A deed executed by a Chickasaw Indian minor to lands allotted to him, not being made by his guardian pursuant to an order of a county court having jurisdiction, is null and void.

**4. Same—Deed not Validated by Subsequent Decree of District Court Quieting Title.**

Such Indian minor being legally incompetent to execute a conveyance of land allotted to him, except pursuant to an order of a county court having jurisdiction, a district court is without jurisdiction to give validity to a void conveyance executed by such minor, and a decree of the district court in an action between the said minor and his grantee, quieting title in such grantee, being void for want of jurisdiction, does not divest such minor of his title.

Error from District Court, Haskell County; D. C. McCurtain, Judge.

Action by J. W. McClendon against Fred Cotton and another. Judgment for plaintiff, and defendants bring error. Affirmed

Malcolm E. Rosser, for plaintiffs in error.

J. S. Arnote, for defendant in error.

CLARK, J.   This cause presents error from the district court of Haskell county.

This case was brought by defendant in error, J. W. McClendon, against the plaintiffs in error, Fred Cotton and Alliance Trust Company, in the district court of Haskell county. Petition was filed on the 5th day of May, 1924, which alleged in substance that defendant in error was the owner of certain land located in Haskell county, and that said land was patented by the Choctaw and Chickasaw Nations to Frank Harris, a citizen by blood of the Chickasaw Nation enrolled opposite Roll No. 4686; that Frank Harris, joined by his wife, on August 4, 1919, for a valuable consideration sold and conveyed said land to J. W. McClendon; that Fred Cotton was in the unlawful possession of the same; and asked damages for the unlawful detention of said premises.

Defendant in error further alleged that on August 17, 1917, said Frank Harris, then a single man, by warranty deed attempted to convey the land and premises described in first cause of action to Fred Cotton; that said deed is void for the reason that at the date of execution and delivery of said deed, Frank Harris was a minor under the age of 21 years, and Frank Harris being a member of the Five Civilized Tribes, a Chickasaw Indian by blood, and enrolled as such under Roll No. 4686; that Fred Cotton obtained no interest in or to said premises by reason of said deed.

Defendant in error further alleged that Frank Cotton on the 22nd day of November, 1918, executed and delivered to the Alliance Trust Company a mortgage upon said land and premises. Defendant in error prayed the deed from Frank Harris to Fred Cotton be canceled and mortgage from Fred Cotton to Alliance Trust Company be canceled, and that he have judgment for possession, and damages for unlawful detention, and that his title be quieted.

The Alliance Trust Company filed its answer in which it admitted holding the mortgage and alleged that Frank Harris had attained his majority on the 17th day of August, 1917, as shown by the entire enrollment records of the Commission to the Five Civilized Tribes; that the deed from Frank Harris to Fred Cotton was valid and conveyed fee-simple title; that on the 15th day of January, 1918, Fred Cotton brought an action in the district court of Haskell county against the said Frank Harris to quiet title to said premises; that Frank Harris appeared in said action and filed an answer; that said case was tried on the 20th day of September, 1918, and judgment was rendered in said action quieting the title of said Fred Cotton; that Frank Harris appealed from said judgment to the Supreme

Court of the state of Oklahoma; that said appeal was dismissed for want of prosecution; that the claim set up by plaintiff in this action was adjudicated, determined, and adjudged against the said Frank Harris, and was binding and effective upon and against the plaintiff, and bars plaintiff, defendant in error, from claiming any right by reason of said conveyance from Frank Harris.

Fred Cotton filed separate answer, in substance, the same as that of the Alliance Trust Company.

Defendant in error filed a reply and alleged that the purported judgment entered in No. 1817 by the district court of Haskell county, wherein Fred Cotton was plaintiff and Frank Harris was defendant, and referred to in plaintiff in error's answer, was void for the reason that said action was brought and the purported judgment rendered therein while the said Frank Harris was under 21 years of age, said Frank Harris being a citizen by blood of the Chickasaw Nation, as fully set forth in plaintiff's petition; that said action was not brought upon a bona fide issue, but was brought for the purpose of endeavoring to convey title by judgment of said court while the said Frank Harris was under 21 years of age.

Defendant in error, plaintiff below, further alleged that he was not a party to said action, and that at the time he purchased said land from the said Frank Harris, he had no notice or knowledge of said judgment for the reason an abstract of said land did not contain said judgment; that the judgment was a cloud upon the title of defendant in error, and prayed that same be canceled.

Defendant in error also filed a reply to answer of Fred Cotton which in substance was the same as reply to the answer of Alliance Trust Company. Upon the issues joined a trial was had to the court. The court found the issues in favor of the defendant in error, plaintiff below, J. W. McClendon.

The trial court found that the warranty deed executed and delivered by Frank Harris and his wife, Myrtly Harris, to J. W. McClendon on the 4th day of August, 1919, was a valid deed and conveyed the title to said real estate from Frank Harris to plaintiff, J. W. McClendon, and that plaintiff is the owner and entitled to recover the possession of said real estate.

The court found the rental value of the real estate to be $500 per year.

The court found that Frank Harris, a part of whose allotment is involved in this action, is a Chickasaw Indian, being enrolled under Roll No. 4686, and was born July 6, 1898, and that he did not reach his majority, the age of 21, until July, 1919,

The court found that the deed executed and delivered by Frank Harris to defendant Fred Cotton, dated August 17, 1917, and recorded in Haskell county, was executed while said Frank Harris was a minor, and is void, and that plaintiff was entitled to have said deed canceled and canceled of record.

The court further found that the mortgage executed by Fred Cotton and his wife, Majorie Cotton, to the Alliance Trust Company, Ltd., on November 22, 1918, was executed by Fred Cotton and wife without having title thereto, and at a time when Frank Harris, the owner of said land, was a minor, and that said mortgage is void and plaintiff is entitled to have the same canceled and canceled of record.

The court further found that in the action filed in the district court of Haskell county by Fred Cotton, plaintiff, against Frank Harris, as defendant, on or about January 5, 1918, which action was to quiet title to land and premises involved in this action, upon which action of Fred Cotton against Frank Harris judgment was rendered September 30, 1918, that said trial was begun and all proceedings thereunder were had while said Frank Harris was a minor, and that the court had no jurisdiction of said action and that the judgment rendered therein is void and that plaintiff is entitled to have same canceled and set aside.

The court rendered judgment in favor of plaintiff, defendant in error, and canceled the deed from Harris to Cotton and the mortgage from Cotton to the Alliance Trust Company, Ltd., adjudged defendant in error, plaintiff below, to be the owner of said land, and gave him judgment for possession of same and judgment against Fred Cotton for $2,000 rent, and canceled the judgment in case No. 1817 in the district court of Haskell county, entitled "Fred Cotton v. Frank Harris."

Plaintiffs in error filed motion for a new trial, which was overruled, and they brought the case here for review. Defendant in error filed motion to dismiss appeal. Defendant in error admits that if motion for new trial was necessary to review error complained of, then case-made was served in time, but contends that a motion for a new trial was unnecessary. Section 572, C. O. S. 1921, provides:

"A new trial is a re-examination in the same court of an issue of fact after a verdict by a jury, the approval of the report of a referee, or a decision by the court."

Defendant in error cites many cases in support of this motion.

We think this case is clearly within the rule announced by this court in the case of Jones et al. v. Fearnow et al., 47 Okla. 586, 149 Pac. 1138, in which this court said:

"Where a case is tried upon an agreed statement of facts and upon admissions of counsel, documentary evidence, and oral testimony, the law does not dispense with the necessity of a motion for a new trial, where it is sought to present the case to this court for review. That the documentary evidence and oral testimony is not controverted does not change the rule that it is evidential in its nature, and from which material ultimate facts may be inferred, but in regard to which there is no agreement."

The motion to dismiss is overruled.

All the substantial questions in the case are covered by the third, fourth, and fifth assignments of error. The third and fourth assignments of error will be considered together.

"3. The court erred in overruling the demurrer of the plaintiffs in error, interposed at the close of the testimony of defendant in error, to the evidence introduced by the said defendant in error.

"4. The court erred in holding and finding that the entire enrollment record introduced in evidence in said case did not show that Frank Harris was more than 21 years old on the 17th day of August, 1927."

Section 3 of Act of Congress, May 27, 1908, 35 Stat. 312, provides:

"And the enrollment records of the Commission to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

The sole question under this assignment of error is the age of Frank Harris. Plaintiffs in error contend that the enrollment records disclose that Frank Harris was born July 6, 1896, while defendant in error contends that the same record conclusively shows the date of birth of Frank Harris to be July 6, 1898.

A certified copy of the enrollment record of Frank Harris, certified to as the entire enrollment record of Frank Harris, was offered in evidence by defendant in error. Frank Harris is shown to be enrolled, Chickasaw Roll No. 4686, on the census card identified as No. 2. Also on the census card is this finding:

"No. 2 Born July 6, 1898, proof of birth filed March 9, 1903.

"Enrollment of No. 2 hereon approved by the Secretary of Interior, September 12, 1903."

As a part of the enrollment record were affidavits of birth as follows:

Lila Harris, mother, dated May 16, 1903, that Frank Harris was born July 6, 1898.

Sarah Harris, midwife, dated May 16, 1903, that Frank Harris was born July 6, 1898.

Another affidavit of Lila Harris, mother, dated December 24, 1902, that Frank Harris was born July 6, 1898.

Also affidavit of Sarah Harris, midwife, dated December 24, 1902, that Frank Harris was born July 6, 1898.

And a further affidavit by Sarah Harris, midwife, dated October 20, 1898, that Frank Harris was born July 6, 1896.

The following letter from Tams Bixby, chairman to Commission of the Five Civilized Tribes, to Isaac Harris, father of Frank Harris, is part of the enrollment record:

"Muskogee, Indian Territory,
"March 10, 1903.

"Isaac Harris,
"Kintah, Indian Territory.

"Dear Sir:

"Receipt is hereby acknowledged of the affidavits of Lila and Sarah Harris relative to the birth of your minor son, Frank Harris, July 6, 1898; and the same being in proper form, have been duly filed with the records of the Commission as evidence of birth of the above named child.

"Respectfully,
"Tams Bixby, Chairman."

Also letter from C. R. Breckenridge to Isaac Harris:

"Muskogee, Indian Territory,
"June 3, 1903.

"Isaac Harris,
"Kintah, Indian Territory.

"Dear Sir:

"Receipt is hereby acknowledged of your letter of the 28th. ult., relative to proof of your minor son. Frank Harris: you are informed that it appears from our records that the affidavits of Lila and Sarah Harris relative to the birth of Frank Harris were received at this office and duly filed with our records May 20, 1903.

"Respectfully,
"C. R. Breckenridge.
"Commissioner in Charge."

This last letter referred to the affidavits sworn to May 16, 1903.

This is the entire enrollment record of Frank Harris.

Plaintiffs in error contend that the affidavit of Sarah Harris, sworn to on the 20th day of October, 1898, fixing the date of birth of Frank Harris July 6, 1896, together with the affidavit of Sarah Harris fixing the date of birth of Wes Harris as the 12th day of April, 1898, fixes the date of birth of Frank Harris as July 6, 1896. There is a conflict in the affidavits of Sarah Harris as to the age of Frank Harris. It would be impossible, if Wes Harris was born on April 12, 1898, for Frank Harris to have been born July 6, 1898, of the same mother.

There were two sets of affidavits giving the date of birth of Frank Harris as July 6, 1898, made by Lila Harris, mother, and Sarah Harris, midwife. The first set was sworn to December 24, 1902. The second set was sworn to on the 16th day of May, 1903. The last set was marked on the back, "Approved May 20, 1903, C. R. Breckenridge, Commissioner." This appears to be the proof relied on by the Commission in fixing the date of birth of Frank Harris as July 6, 1898.

Included in the enrollment record were two affidavits of the mother, two affidavits of the midwife, made at different times before different notaries and under different circumstances. The final conclusion of the Commission, the placing of Frank Harris upon the roll, and the approval of that final roll by the Secretary of the Interior were all to the effect that Frank Harris was born July 6, 1898. The only evidence to the contrary is the affidavit of Sarah Harris, the midwife, that Frank Harris was born July 6, 1896, and that Wes Harris was born April 12, 1898. Sarah Harris' affidavit loses its force for the reason both are in direct conflict with her affidavits made May 16, 1903, and December 24, 1902, that Frank Harris was born July 6, 1898. The final conclusion of the Dawes Commission made May 20, 1903, that Frank Harris was born July 6, 1898, was made in the light of all testimony before it, and it was in a much better position to determine the correct date of birth of Frank Harris than is the court at this time. There is nothing in the enrollment record of Frank Harris in conflict with the finding of the Commission except the affidavit of Sarah Harris, which affidavit is discredited by affidavits to the contrary.

This court said in Perryman v. Sharp et al., 71 Okla. 242, 176 Pac. 526, syllabus paragraph No. 5:

"The entire enrollment record, and not the conclusion or finding of the Commission to the Five Civilized Tribes based thereon, is by the Act of Congress of May 27, 1908 (35 Stat. 312), made conclusive as to age in determining questions arising under the act."

While the conclusion of the Commission is a part of the enrollment record and should at all times be given great weight, and where the same is not contrary to or in conflict with the evidence contained in the enrollment record, this finding by the Commission should be followed.

In Holland v. McDaniel, 230 Fed. 945, the Circuit Court of Appeals, 8th Circuit, said:

"Under Act of May 27, 1908, c. 199, No. 3, 35 Stat. 313, providing that the enrollment records of the Commissioner to the Five Civilized Tribes should be conclusive evidence as to the age of an enrolled citizen or freedman, the enrollment record, giving the age of an Indian as nine years, is conclusive that on that date he had passed his ninth birthday and had not yet reached his tenth, but is not conclusive that he was exactly nine years of age on that day, and does not establish that he was a minor when he made a conveyance of land one month less than 12 years thereafter."

In discussing this case, on page 950, that court said:

"If in this case the question was whether or not the plaintiff was nine years of age on October 11, 1900, the judgment of the Commission under the statute would be conclusive. But, as we have before indicated, that is not the question. The question here is, Was the plaintiff a minor on September 25, 1912? That question the enrollment record introduced in evidence did not determine, and, of course, is not conclusive. The enrollment record introduced in evidence left the date of birth of the plaintiff an open question to be established by competent evidence. We do not wish, however, to be understood as deciding this would be so in cases where the Commission has found the date of birth on an application for enrollment."

The question in the instant case is, Was Frank Harris under the age of 21 years on the 17th day of August, 1917? If he was born on July 6, 1896, he was. If he was born on July 6, 1898, he would not have attained his majority until July 6, 1919, which was practically two years subsequent to the date of the deed from Harris to Fred Cotton.

The trial court found that Frank Harris was born July 6, 1898, and this finding is conclusively supported by the enrollment record of Frank Harris offered in evidence.

The Circuit Court of Appeals in the case of Holland v. McDaniel, supra, construes

the Act of Congress to mean that the record giving the age of an Indian as nine years is conclusive that on that date he had passed his ninth birthday, and had not reached his tenth. This construction is also conclusive that Frank Harris was given by the enrollment record as four years old in 1902. The same is conclusive that he had passed his fourth birthday and had not yet reached his fifth.

This being true, Frank Harris had not attained his majority, 21 years of age, at the time of the execution of the deed to Fred Cotton, and the trial court did not commit error in so holding.

It is true that the age of Frank Harris is in conflict with the age of Wes Harris, but the age of Wes Harris was admissible in evidence only for the purpose of shedding light as to the age of Frank Harris, and we are of the opinion that the age of Wes Harris, his enrollment record being supported only by the affidavit of Sarah Harris, does not throw any light upon the age of Frank Harris.

Congress did not say that the enrollment records were true, but made them conclusive as to the age of the Indian.

The reason for so doing is well expressed by the Supreme Court of the United States in the case of United States v. Ferguson et al., 247 U. S. 175:

"At the trial counsel for the plaintiff, after calling attention to the fact, which was admitted, that the father was enrolled as a full-blood Creek, sought to show by oral testimony that the mother, whose name did not appear on any of the approved rolls, was a full-blood Seminole; but the court was of opinion that the quantum of Indian blood possessed by Yekcha must be determined by the approved roll, and so rejected the testimony. Then, interpreting the roll as meaning that he was an Indian of the half-blood, the court held that under the Act of April 26, 1906, he was free to make conveyances.

"We think the court rightly excluded the oral testimony and gave controlling effect to the approved roll. When Congress came to make a difference between full-blood and mixed-blood Indians, by subjecting the former to restrictions not applied to the latter, it evidently deemed it better for the Indians and all concerned that there be some fixed, easily accessible and reasonably reliable evidential standard by which to determine, for the purpose of the matter then in hand, who were of the full-blood and who of the mixed-blood. Congress had power to deal with the subject and from among the standards which might have been prescribed it selected the rolls at its direction by the commission

charged with making the allotments. Not improbably it was thought that the rolls, even if not altogether free from mistake and error, would be quite as reliable as oral testimony and would have the advantage of being both easily accessible and enduring. But, passing the reason for it, Congress directed that the quantum of Indian blood be determined' by the approved rolls, and it did this in a connection which leaves no doubt of its purpose to give controlling effect to the rolls. Emphasis was given to this purpose in the Act of May 27, 1908, c. 199, 35 Stat. 312, where, in again dealing with restrictions on the alienation of allotments, it was provided that the approved rolls 'shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act.'

"Both the federal and state courts in Oklahoma have for several years applied the view here expressed. Bell v. Cook, 192 Fed. Rep. 597, 604-605; Yarbrough v. Spalding, 31 Okla. 806, 123 Pac. 843; Lawless v. Raddis, 36 Okla. 616, 129 Pac. 711."

Congress made a difference between a minor and an adult by subjecting the former to restrictions not applied to the latter. It evidently deemed it better for the Indians and all concerned that there be some fixed reliable standard by which to determine who were minors and who were adults. Congress directed that the age of the Indians be determined by the enrollment record, well knowing that the same would not be free from mistake and error, but would be as reliable as oral testimony and would have the advantage of being both easily accessible and enduring.

Counsel for plaintiffs in error cites the case of Winsor v. Wilkinson, 98 Okla. 183, 224 Pac. 716, as being exactly in point. In the Winsor Case, the father James Critterdon's, evidence under oath was preserved in enrolling his family and he gave the names and ages of the children included in the controversy in that case. This testimony was in conflict with the affidavit of the mother and the midwife and in conflict with the records of the Commission. This court in commenting on these affidavits said:

"Construing the entire enrollment record, introduced in this case, it is manifestly clear that the two birth affidavits of the mother and midwife, as to the exact date of the births of these two children, Cicero and Maggie M., are in hopeless conflict and cannot be reconciled in the very nature of things, and neither of which can have any probative force in the decision of this case, except in the light of the other parts of the enrollment records."

This statement of the court applies with equal force to the affidavits of Sarah Harris in the case at bar. The three affidavits by her are in hopeless conflict and cannot be reconciled in the very nature of things, and therefore should be given no weight.

The finding of the trial court that Frank Harris was born July 6, 1898, and that he did not reach his majority until July 6, 1919, is correct and in accord with the enrollment record, and the finding of the trial court that the deed executed by Frank Harris to Fred Cotton dated August 17, 1917, was void and did not convey title is correct.

Plaintiffs in error's next assignment of error is as follows: •

"The court erred in refusing to hold and find that the judgment in case No. 1817 in the district court, of Haskell county, entitled 'Fred Cotton v. Frank Harris', precluded and estopped the plaintiff, defendant in error, from maintaining this suit."

Under this assignment of error, plaintiffs in error contend there were no restrictions on the land in the true sense, though if a minor, he could not convey without the approval of the county court, and cite the case of Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755. At page 665 of this case this paragraph expresses the views of this court:

"It therefore follows that, since Rebecca Johnson was not 18 years of age at the time she conveyed the land in controversy to defendant in error, and the sale to him was not made under the supervision and order of any probate court of the state, he acquired no title thereby, and has not sufficient interest in the lands in controversy to entitle him to maintain this action."

To follow the doctrine laid down in this case, and we think the same is sound, plaintiff in error did not have sufficient interest in the land in controversy to entitle him to maintain the action in the district court of Haskell county.

He also cites the case of Tirey et al. v. Darneal, 37 Okla. 606, 133 Pac. 614, of which syllabus paragraphs 1 and 2 read as follows:

"1. Section 6 of the Act of Congress of May 27, 1908 (35 Stat. at L. 312, c. 199), providing that the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the control and jurisdiction of the probate (county) courts of the state of Oklahoma, is in the nature of a restriction, by Congress, on the alienation of land belonging to minor allottees, and as such can only be removed by a regular proceeding as provided by statute,

through the instrumentality of the county court, and a deed executed by a minor, even though married, without any attempt to comply with such law, is void.

"2. Where such a void deed is executed, the grantor is not required to refund the consideration therefor before asking relief in equity."

In the case at bar Frank Harris had not reached the age of 21 years, or the age of majority, at the time judgment was rendered in the district court of Haskell county.

Defendant in error contends that the deed from Frank Harris to Fred Cotton, being made while the said Frank Harris was a minor, was ineffectual to convey any title and was void in so far as it undertakes to convey the land in controversy.

This court, in a well-considered opinion, passed squarely on this question in the case of Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, the first, second, and third paragraphs of the syllabus of which read as follows:

"1. A decree of a district court of this state purporting to confer upon an Indian minor allottee of tribal lands majority rights, including authority to execute a conveyance of her allotment, is ineffectual and void, in so far as it undertakes to authorize a conveyance of said lands in violation of the congressional restrictions thereon.

"2. In an action to set aside a void conveyance of the lands of an Indian minor allottee, it is not necessary for plaintiff to plead a formal tender and offer to return the consideration received therefor as a condition precedent to maintaining such action.

"3. The fact that a minor Indian allottee in her own name brought suit to set aside a void conveyance of her allotted lands, executed after May 27, 1908, and thereafter permitted said suit to be dismissed with prejudice, cannot operate as a bar to a subsequent suit by her upon attaining her majority to cancel said deed and have same removed as a cloud upon her title."

In the case of Crow v. Hardridge, 73 Okla. 136, 175 Pac. 115, this court said in the second, third, and fourth paragraphs of the syllabus:

"2. The provisions of section 6 of an Act of the Congress of May 27, 1908 (35 Stat. 312), 'that the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma', embraces allotted lands inherited by such minors.

"3. A deed executed by a Creek Indian minor to allotted lands inherited by him, not being made by his guardian, pursuant

to an order of the county court having jurisdiction, is null and void.

"4. Such Indian minor being legally incompetent to execute a conveyance of the allotted lands inherited by him, except pursuant to an order of the county court having jurisdiction, the district court is without jurisdiction to give validity to a void conveyance executed by such minor, and a decree of the district court in an action between said minor and his grantee, quieting title in such grantee, being void for want of jurisdiction, does not divest such minor of his title."

In the case at bar there is no contention that the deed in question was executed and approved by the county court as provided for the sale of a minor's land.

In the case of Tidal Oil Company et al. v. Flanagan, 87 Okla. 231, 209 Pac. 729, this court, following this rule, said in syllabus paragraphs 3 and 4:

"3. A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance.

"4. The district courts of this state are without jurisdiction to enter a valid judgment divesting an Indian minor allottee of title to his allotted lands by entering a decree quieting title in a party asserting title to such lands under void conveyances executed in violation of a federal statute prescribing the manner by which title may be acquired to such lands. The title to such lands may be acquired only under a regular probate sale as provided for by law."

Also see Miller, Administrator, v. Tidal Oil Co., 106 Okla. 212, 233 Pac. 696, and Barnard v. Bilby, 68 Okla. 63, 171 Pac. 444.

The trial court found, and said finding is supported by the record, that the judgment in the case of Fred Cotton against Frank Harris, No. 1817, in the district court of Haskell county, Okla., quieting title, was void and should be canceled and set aside. This finding by the court is supported by the facts and is not against the clear weight of the evidence, and the court did not commit error in so finding.

A careful examination of the record and the authorities cited by plaintiffs in error and defendant in error convinces us that the court committed no error in the trial of this cause, and its judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and PHELPS, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 3 C. J. p. 963, §850. (2) 31 C. J. p. 490, §31. (3) 31 C. J. p. 514, §79; p. 519, §91. (4) 31 C. J. p. 514, §79.