## BARKUS et al. v. LINCOLN.

No. 25098.   Jan. 21, 1936.

Spencer Norvell, for plaintiffs in error.

Thos. J. Horsley and Hicks Epton, for defendants in error.

PER CURIAM. For convenience the parties will be referred to here as they appeared in the court below. The petition in this case was filed on June 9, 1931. The plaintiff, Peter Lincoln, sued to quiet title to the following described land: Southwest quarter of southwest quarter of section 28 and north half of the northwest quarter of section 33, all in township 9 north, range 6 east, Seminole county, Okla.

In due course an answer and cross-petition was filed by Tena Barkus and some 21 other defendants and cross-complainants, who asserted they owned by inheritance an undivided one-half interest in the premises in suit, because they were brothers and sisters and the issue of deceased brothers and sisters of one Fannie Lincoln, who died in June, 1931, and who at the time of her death was the wife of Peter Lincoln, the plaintiff in this case, the only other heir being Peter Lincoln, the husband, Fannie Lincoln, the wife, having died intestate, leaving no issue nor the issue of any deceased child, and no father and no mother, but left surviving her her husband, Peter Lincoln, the plaintiff in this action, and the defendants and cross-complainants in this case.

It is further alleged in the cross-petition that Fannie Lincoln was a freedman citizen of the Seminole Tribe of Indians, duly and legally enrolled as such upon the approved roll of the Seminole Tribe, and that there was allotted to the said Fannie Lincoln as her distributive share of the land of the Seminole Tribe the real estate described in this action, and that certificate of allotment and patent therefor was duly issued to Fannie Lincoln by the United States government and the Seminole tribal authorities, and that Fannie Lincoln died seized and possessed of said tract of land.

The prayer of defendants and cross-complainants was that they be adjudged to be the owners of an undivided one-half interest in said land, and that the same be parti-

tioned to the respective owners according to interest, but if that could not be done that the land be sold and the proceeds distributed.

Plaintiff filed an answer to the cross-complainants, which was by way of a general denial and specifically admits, "the allotment of the land and states that the same was allotted to the said Fannie Lincoln during her marital relations with Peter Lincoln."

The case came on for trial on September 29, 1931. A jury was waived and the case was tried to the court. Upon the trial of the case the following stipulation of facts was dictated into the record by agreement of the parties:

"It is stipulated and agreed by and between the parties hereto that the land in controversy, to wit: The southwest quarter of the southwest quarter of section twenty-eight and the north half of the northwest quarter of section thirty-three, all in township nine north, range six east, Seminole county, Okla., was allotted and conveyed by proper allotment deeds to Fannie Lincoln, a Seminole citizen, she being a freedman member of the Seminole Tribe of Indians, and being duly enrolled as such upon the final rolls of said Tribe opposite Seminole roll 2252; that she died intestate in Seminole county, Okla., on May 31, 1931, seized and possessed of the above-described land; that the said Fannie Lincoln married the plaintiff, Peter Lincoln, about 50 years prior to this time, to wit: September 29, 1931, and continuously lived and resided with the said Peter Lincoln as his lawful wife, and that the said Peter Lincoln and Fannie Lincoln were married long prior to the selection of allotment above described by the said Fannie Lincoln, and long prior to the conveyance of the said allotment to the said Fannie Lincoln. That the said Fannie Lincoln and Peter Lincoln had no issue born to said marriage. That the said Fannie Lincoln at the time of her death left no issue nor the issue of any deceased child, but did leave surviving her her husband, Peter Lincoln, the plaintiff in this action. That she left no father and no mother. That she did leave surviving Tena Barkus, her sister, Passey Pompey, her brother, Lizzie Holmes and Rachel Lincoln, her nieces, children of her deceased sister, Silby Holmes, who died prior to the death of Fannie Lincoln, her nieces Cora Pompey, Bessie Pompey, Missey Pompey and Martha Pompey, children of her deceased brother John Pompey, who died prior to the death of Fannie Lincoln, and Randolph Cudjo her nephew, the surviving son of her deceased sister, Bell Cudjo, who died prior to the death of Fannie Lincoln, defendants herein. That she left surviving no brother or sister and no child or children of deceased brother or sister other than the ones above named.

"That the defendants Hanklin Abram and James Abram are great nephews of Fannie Lincoln, they being grandchildren of Bell Cudjo by her son Pompey Abram who died prior to the death of Fanny Lincoln. That the defendants George Foster and Bettie Leo Carolina are a great nephew and great niece of Fanny Lincoln, they being grandchildren of Bell Cudjo by her son Dennie Foster who died prior to the death of Fannie Lincoln. That the defendants Nellie Fay, Pinkie Carolina and Evangeline Sandy and Raymond Barkus (also called Richmond Barkus) are grandchildren of Bessie Carolina. The said Bessie Carolina died before the death of Fanny Lincoln and was the daughter of freedman Pompey, a half-brother to Passey Pompey on his father's side. The defendants Ellen Wade, Sam Wade, Sylvia Davis and Molly Davis are the children of Margaret Greenwood who died prior to the death of Fanny Lincoln. The said Margaret Greenwood was the daughter of Betsey, a half-sister of Passey Pompey on the father's side.

"It is further stipulated and agreed that in order to apply the statutes of descent and distribution to the admitted facts, the sole question for determination in this case is whether or not the land in controversy is properly acquired by the joint industry of husband and wife during coverture in contemplation of section 11301 of the Compiled Oklahoma Statutes 1921, and particularly that part, as follows:

" 'Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation.' "

After the stipulation was put in evidence, the attorneys for defendants and cross-complainants then offered two witnesses, Randolph Cudjo and Passey Pompey, who gave evidence as to who the surviving heirs of Fannie Lincoln were and their relationship to Fannie Lincoln. A careful check of the testimony given by these witnesses appears to show that every heir testified about, and his or her relationship to Fannie Lincoln were identical with the facts stipulated on those points. In fact, the stipulation covers the heirship more fully and completely than does the testimony of the above witnesses.

It cannot be said that in the offering of

the testimony the stipulation was waived, for most of the material facts covered in the stipulation were not touched upon by the oral testimony offered, and no fact was proved which was not stipulated about. And the stipulation and the testimony, in so far as they do cover the same ground, do not conflict in any particular, but, on the other hand, are identical. In such situation, we think it must be conceded that all of the ultimate facts were stipulated. The facts being agreed upon, there was left to the court only the application of the law to the agreed facts, hence there could be no re-examination of the issues of fact. Lusk et al. v. Humble Oil & Refining Co. et al., 140 Okla. 152, 282 P. 311.

The situation in this case is quite similar to that in the case of Landers et al. v. Bank of Commerce of Okmulgee, 106 Okla. 59, 233 P. 200. In the Landers Case a stipulation of all the facts was made. In the stipulation was incorporated the amount and correctness of certain labor claims, and the stipulation then concluded, "then we will agree that the mortgage was made and filed as they contended, by the mortgagee, and leave the question of law as to the priority to be taken care of in argument, otherwise, the correctness and justness of my claims are not admitted and I am not ready because I will have to have the foreman, and the superintendent to prove them."

It appears that after the above stipulation was made and put into evidence, the mortgage in question was then offered in evidence. On appeal the Supreme Court said·

"Plaintiffs assume the position that as the mortgage was introduced in evidence and its provisions utilized in the argument, this case falls within the purview of Thomas v. Arthurs, 8 Kan. App. 126, 54 P. 694, and Jones v. Fearnow, 47 Okla. 586, 149 P. 1138, in which cases there was an agreed statement of facts, but further evidence of a documentary nature was introduced, and it was further agreed that if A., B., and C. were present, they would testify to certain facts, but there was no agreement that the documents spoke the truth, the agreement reaching only so far as their execution and delivery was in issue, and while it was agreed that A., B., and C. would so testify, if present, from this testimony the court must find the facts.

"In the instant case the agreed statement of facts included the mortgage, and all its terms, its execution, delivery, and recordation, and every fact with reference to inter-

veners' claims, leaving, as counsel for interveners stated in open court, 'nothing but the legal question of priority of the liens to be determined by the court.' "

The principal case relied upon by plaintiffs in error to avoid the motion for dismissal in this case is Jones v. Fearnow, supra. The distinction made by the court between the Jones Case and the Landers Case applies with equal force here. The same distinction may be made as to Cotton et al. v. McClendon, 128 Okla. 48, 261 P. 150, relied upon by the plaintiffs in error.

The stipulation itself shows that the only question submitted to the court was the application of the law to the facts stipulated. We quote from the stipulation:

"It is further stipulated and agreed that in order to apply the statutes of descent and distribution to the admitted facts, the sole question for determination in this case is whether or not the land in controversy is property acquired by the joint industry of husband and wife during converture in contemplation of section 11301 of the Compiled Oklahoma Statutes 1921."

In plaintiffs in error's brief at page 3 it is said:

"At the commencement of the trial a stipulation concerning the land involved and the marital status and relatives of Fanny Lincoln was made by all parties (C.-M. 9-10). Plaintiff produced no testimony, only two witnesses testified for defendants and their testimony concerned only the question of the relatives of Fanny Lincoln (C.-M. 11-15). There will be no disputed facts and an abstract of the testimony will not be necessary."

On page 10 of the same brief it is said:

"The application of the statutes of descent and distribution to the admitted facts presents an unmixed question of law."

The conclusion is inescapable that the parties to the case stipulated all the ultimate facts and the case was so treated and presented to the trial court.

Where that is true no motion for a new trial is necessary or proper, and the filing of such motion does not operate to extend the time within which appeals may be perfected in the Supreme Court; the time for perfecting such appeals runs from the date the judgment is rendered and not from the date of overruling the motion for a new trial, and if the appeal is not lodged in the Supreme Court within the time fixed by law, the attempted appeal may be dismissed.

The judgment in this case was rendered

on March 12, 1932. The petition in error was filed in this court on October 16, 1933, which was more than a year from the date of judgment.

Appeal dismissed.

The Supreme Court acknowledges the aid of Attorneys William McGinnis, Allen R. Shaw, and Geo. P. Cantrell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council. and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McGinnis and approved by Mr. Shaw and Mr. Cantrell, the cause was assigned to a justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN. and GIBSON, JJ., concur.