**EYSENBACH et al. v. NAHARKEY.**

No. 13931—Opinion Filed Dec. 16, 1924.

Rehearing Denied April 14, 1925.

**1. Indians—Restrictions on Land—Invalidity of Conveyances.**

The act of Congress of April 26, 1906, imposed restrictions upon Indian lands allotted to full-bloods, and any attempted alienation of such land without compliance with the provisions of the act is a nullity, and does not operate to divest the Indian full-blood of his title.

**2. Same—Invalidity of Judgment of Partition.**

Plaintiff in 1907 filed his petition in the

United States District Court for Indian Territory, praying partition of lands inherited from full-blood Indian parents. such lands being restricted lands under the act of Congress of April 26, 1906. Held, that the partition of the lands having the effect of completely divesting the plaintiff of title to that portion of the lands allotted to the other heirs, was such an alienation of the lands of full-blood Indian heirs as was prohibited by the act of April 26, 1906, and the United States District Court for Indian Territory was without jurisdiction of the subject-matter of the action, and the judgment of partition therein rendered is wholly null and void.

### 3. Tenancy in Common—Liability to Co-tenant for Rents and Profits.

Where A. and B. are tenants in common of lands, and B. brings his action against A. for the purpose of establishing his interests in the lands, and to recover judgment against A. for the reasonable rental value of the lands, or for the rents, issues, and profits arising therefrom, and the evidence discloses that B. never claimed an interest in the land until suit was filed; never attempted to occupy the lands, and was never excluded therefrom by A., and A. never received any rents, issues, or profits from the land so held in common, it is error for the court to enter judgment against A. for rents, issues, and profits, for accounting, for the period during which the lands were held in common by A. and B.

### 4. Covenants—Breach of Warranty of Title —Measure of Damages.

The measure of damages for breach of warranty of title to lands, where such breach is but partial, is such proportion of the purchase price as the value of the property affected bore at the time of the conveyance by warranty deed, to the value of the whole property, with interest thereon for a period during which the grantee derived no benefit from the property.

### 5. Same.

Where an action is brought against a grantee to recover real estate conveyed to him by warranty deed, and the warrantor retains eminent and able counsel and comes in and defends, it is error for the court to render judgment, in favor of the warrantee against the warrantor for attorney's fees paid to additional counsel employed exclusively by the warrantee to protect his individual interests.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Sammie Naharkey against O. K. Eysenbach et al. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and remanded in part.

Stuart, Cruse & Bland and E. L. Doerner, for plaintiffs in error D. K. Eysenbach and Bessie Eysenbach.

C. A. Steel, W. A. Daugherty, and E. D. Brewer, for plaintiff in error W. E. Hardesty.

Lashley & Rambo and John D. Wakely, for defendant in error.

Opinion by RUTH, C. This action was filed in the district court of Tulsa county, by defendant in error, as plaintiff, against the plaintiffs in error, as defendants, and the parties will be referred to in this opinion as they appeared in the trial court.

Plaintiff alleges he is the legal and equitable owner of an undivided three-fourths interest in the following described lands in Tulsa county, Okla., to wit: "East ½ of the northeast ¼ of the southwest ¼ and the east ¼ of the southeast ¼ of the southwest ¼ of section 26, twp. 19 north, range 12 east I. M. in Tulsa county," and seeks to have all conveyances of the said lands to the defendants by, through or under conveyances from Martha Naharkey, formerly Martha Red, canceled as clouds on the title of the plaintiff, and that he be adjudged the legal and equitable owner of an undivided ¾ interest in the lands. Plaintiff further alleges defendants have been in possession of the lands for a period of five years, and prays judgment in the sum of $600 as the reasonable rental value thereof.

O. K. and Bessie Eysenbach were permitted to intervene and defend title of W. E. Hardesty, and all the defendants filed demurrers, and upon the same being overruled defendant W. E. Hardesty filed his answer consisting of a general denial, and claiming ownership of the lands.

O. K. and Bessie Eysenbach filed answer consisting of general denial and further answering deraigned title through Martha Red Naharkey, who, it is alleged, received the lands as her distributive share of the estate of Moses Naharkey, deceased, husband of Martha. That the lands of which Moses died seised were partitioned by the United States District Court for Indian Territory on suit brought by Sammie Naharkey; that after the decree of distribution, Martha Red Naharkey sold the lands to Ethel Davis, and Hugh Gregg, who sold and conveyed the lands to the Eysenbachs, who in turn sold and conveyed to the defendant Hardesty.

It appears from the record that Moses and Millie Naharkey were Creek Indians, and were husband and wife, and the plaintiff, Sammie Naharkey, was the only child; that as a Creek Indian, Moses Naharkey had allotted to him 160 acres of land, the same being west ½ of northeast ¼ of section 35, and west ½ of the west ¼ of the southeast ¼, section 39, twp. 19 north, range 12 east, and the northeast ¼ of the southeast ¼ of section 15, twp. 19 north, range 11, I. M., and Millie Naharkey was allotted 160 acres of land. the same being the N. ½ of the S. E. ¼, section 2, twp. 18 N., R. 12 E., and east ½ of the east ½ of the S. W. ¼, section 26, twp. 19 north range 12 east, and N. W. ¼ of southeast ¼, section 15, twp. 19 north, R. 13 east.

That after the death of Millie Naharkey in 1901, she having died intestate, the lands of which she died seised descended according to the laws of the Creek Nation then in force. Section 8 of said laws of the Muskogee (Creek) Nation 1880 (Perryman) provides as follows:

"The lawful or acknowledged wife of a deceased husband shall be entitled to one-half of the estate, if there are no other heirs, and a child's portion if there should be heirs, in all cases where there is no will. The husband surviving shall inherit of a deceased wife in like manner."

Under the law of the Creek Nation, upon the death of Millie Naharkey the husband. Moses, became entitled to ½, or 80 acres, and the son, Sammie, this plaintiff, became entitled to ½, or 80 acres, of the lands of which Millie died seised.

The lands, however, were never divided or apportioned or partitioned, and after Millie's death Moses married one Martha Red. and in 1904 a daughter was born to them, whom we shall designate as Little Millie to distinguish her from Millie, the mother of Sammie.

After the birth of Little Millie, to wit, December 22, 1905, Moses Naharkey died intestate. seized of his original allotment of 160 acres and the 80 acres of the estate of Millie, his deceased wife, making a total of 240 acres.

In March, 1907, Sammie Naharkey, having attained his majority. filed his petition in the United States Court for the Western District of Indian Territory, sitting at Tulsa, in which he prays the court to partition the lands of Moses and Millie Naharkey and decree him to be the owner of one-half the lands of which his mother, Millie, died seised, and that the 240 acres of which his father, Moses, died seized be partitioned, and

that plaintiff be decreed to be owner of one-half thereof, and Little Millie be decreed to be the owner of the other half, subject. however, to the dower right of Martha Naharkey, to one-third thereof,. as the surviving spouse of Moses Naharkey, and prays that a commission be appointed to make such partition and assignment of dower.

The Laws of Arkansas, then being in force in the Indian Territory, provide as follows: (Mansfield Digest of the Laws of Arkansas) section 2571:

"A widow shal be endowed of the third part of all the lands whereof her husband was seised of an estate of inheritance (a) at any time during the marriage, unless the same shall have been relinquished in legal form."

Section 2599 provides:

"The widow of any deceased person who shall file in the office of the clerk of the court of probate. or with the probate court of the proper county, a relinquishment of her right of dower in and out of the estate of her deceased husband. shall be entitled to receive of the estate. of which her said husband died seised, and possessed, whether real, personal, or mixed, a portion or share thereof, absolutely in her own right, equal to that of a child, which shall be set aside and delivered to her as now provided by the law for dower."

It appears that after the filing of the suit for partition, by Sammie Naharkey, in the United States Court, Martha Naharkey duly and regularly filed her waiver of dower rights and elected to take a child's portion as provided by law. The proceedings of the United States Court for the Western District of Indian Territory appear to have been regular in all respects..

The commission was appointed upon the prayer of Sammie Naharkey, and made its return to the court, and after full hearing had. wherein all parties were represented by able and eminent counsel, the court partitioned the lands, awarding to Sammie Naharkey as his full, just, fair,. and equitable proportion thereof. the following: "North ½ of the scutheast ¼ of section 2, twp. 18 north, range 1 east. and the north ½ of the southeast ¼ of section 15. twp. 19 north. range 13 east, being 160 acres more or less according to government survey."

This gave to Sammie Naharkey 80 acres or one-half of the lands of which his mother. Millie, died seised, as he was entitled to under section 8, Law of Muskogee (Creek) Nation 1880 (Perriman) supra, and also vested in him 80 acres or one-third of the lands of which his father, Moses, died

seised, as he was entitled to under the laws of Arkansas, supra, his stepmother, Martha, having elected to waive dower and take a child's portion.

The court further awarded to "Little Millic" the following lands, being one-third or 80 acres of the lands of which Moses Naharkey died seised, to wit: "West ½ of the N. E. ¼ of section 35, twp. 19 N., R. 12, being 80 acres more or less according to government survey." This being the portion to which she was entitled under the laws of Arkansas (Mansfield Digest, supra) then in force in Indian Territory.

Martha Naharkey having waived her dower right and elected to take a child's portion, was awarded the following lands: "E. ½ of the E. ½ of the S. W. ¼, and the W. ½ of the W. ½ of the S. E. ¼ of section 26 twp. 19 N., R. 12 E., being 80 acres more or less according to government survey." And this action is brought by the plaintiff for a ¾ interest in the 80 acres awarded to Martha Red Naharkey.

Martha Naharkey sold her 80 acres, and after several conveyances, title was finally vested in the defendant W. E. Hardesty.

For a period of 13 years, or from 1907, when the decree of partition was rendered, until 1920. when this action was filed, Sammie Naharkey never laid claim to any interest in the land and never demanded any of the rents, issues, or profits therefrom, and in this action he prays to be decreed the owner of an undivided three-fourths interest in the land, which was by the trial court awarded him, and further prays judgment against the defendants in the sum of $600 and for accounting for all gas and oil rentals or royalties, and was, by the court, given judgment against O. K and Bessie Eysenbach in the sum of $280 and the court awarded judgment against W. E. Hardesty in favor of the plaintiff in the sum of $320, and the court further rendered judgment against O. K. and Bessie Eysenbach in favor of W. E. Hardesty in the sum of $1,600 with interest from October 31, 1914, for breach of warranty of the deed from Eysenbach to Hardesty, and entered a further judgment against Eysenbach in favor of Hardesty in the sum of $1,000, for improvements placed on the land by Hardesty, and further judgment in favor of Hardesty against Eysenbach in the sum of $400 as attorneys' fees.

The court further found that plaintiff, Sammie Naharkey, did institute the proceedings in the United States Court as alleged, but the same were null and void, for the reason the court was without jurisdiction of the subject-matter of the action, and the decree of the United States Court "had no effect whatsoever upon the title of the plaintiff in and to said lands," and required the defendants to make an accounting for all gas and oil rentals and royalties, if any, derived therefrom.

Motions for new trial were duly filed, and upon the same being overruled this cause is regularly brought here for review.

The defendants, the Eysenbachs, present their appeal upon four assignments of error, to wit: First, the decision of the trial court is contrary to the law and the evidence: second, that the court erred in holding that the partition proceedings in the United States Court for Indian Territory in the case of Sammie Naharkey and Millie Naharkey. a minor, No. 247—Law, void, and in holding that said court did not have jurisdiction of the subject-matter of said suit: third, in rendering judgment against Eysenbach in favor of the plaintiff in the sum of $280; fourth, in rendering judgment against Eysenbach in favor of Hardesty in the sum of $1 600 with interest for breach of warranty, $1,000 for improvements, and $400 attorneys' fees.

If the defendants' second specification of error had merit, and should be sustained, it would be unnecessary to consider the third and fourth assignments of error, and we will therefore give the second assignment of error our first consideration.

Defendants contend that "the act of May 2, 1890, conferred jurisdiction of the United States Courts in Indian Territory of controversies involving the right of possession to Indian lands where such controversies were between other members of the same tribes or nations."

The act of June 7, 1897, provided:

"That on and after January 1, 1898, the United States Courts in said territory shall have original and exclusive jurisdiction and authority to try and determine all civil cases at law and equity thereafter instituted * * * and the laws of the United States and the state of Arkansas in force in the territory shall apply to all persons therein, irrespective of race, said courts exercising jurisdiction thereof as now conferred upon them in the trial of like causes and any citizen of any one of said tribes otherwise qualified, who can speak and understand the English language, may serve as a juror in any of said courts." 30 Stat. 83, c. 3.

Act of Congress April 28, 1904, provides:

"All laws of Arkansas heretofore put in force in the Indian Territory are hereby

continued and extended in their operation so as to embrace all persons and estates in said territory, whether Indian, freedman, or otherwise, and full and complete jurisdiction is hereby conferred upon the district courts in said territory in the settlement of all estates of decedents, the guardians of minors and incompetents, whether Indians, freedmen or otherwise."

Defendants' position is that partition is a suit in equity and by virtue and authority of the act of June 7, 1897, supra, and the act of Congress of April 28, 1904, the United States Courts acquired jurisdiction of suits for partition of lands of full-blood Indians.

To construe the act of Congress of June 7, 1897, as contended · for by defendants, would empower the alienation of the lands of full-blood Creek Indians by partition proceedings in direct contravention of the act of April 26, 1906, which act provides in part as follows:

"Section 19. That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for a period of 25 years from and after the approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress." 34 Stat. 144.

Section 23 provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent * * * all conveyances made under this provision by heirs who are full-blood Indians are subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

Section 29:

"That all acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby repealed."

In the instant case the action for partition of the lands was filed in 1907, and while the Act of April 26, 1906, was in full force and effect, and while the restrictions were still upon the lands, and it is not questioned that Moses and Millie Naharkey were full-blood Creek Indians, and Sammie Naharkey was their son. Was, then, partitioning of the lands by the United States Court an alienation of the lands?

This question has been answered in the affirmative both by the Supreme Court of the United States and the Supreme Court of this state, and is no longer open to question. In Robinson v. Fair, 128 U. S. 53, 9 Sup. Ct. 30, 32 L. Ed. 415, it is said:

"We lay aside as not open to dispute, the proposition that there is a difference between distribution and partition. And we are satisfied that that difference was in the mind of the Legislature when it passed the original * * * act, as well as when the Code of Civil Procedure was adopted. As correctly observed by counsel, distribution neither gives a new title to property, nor transfers a distinct right in the estate of the deceased owner, but is simply declaratory as to the persons upon whom the law casts the succession, and the extent of their respective interests; while partition, in most, if not all, of its aspects, is an adversary proceeding, in which a remedial right to the transfer of the property is asserted, and resulting in a decree which either ex proprio vigore, or as executed, accomplishes such transfer."

Coleman v. Battiest, 65 Okla. 71, 162 Pac. 786, was an action for partition of lands inherited from a full-blood. The suit was filed after the approval of the Act of Congress of May 27, 1908 (35 St. 315, c. 199), which provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of deceased allottee."

The trial court sustained a demurrer to the petition and on appeal this court held:

"It is the unquestioned holding of this court that lands of full-blood Indian heirs can only be alienated in the mode provided by Congress. We are of the opinion that, even if the condition arising under the act of partition would result · in the actual division of the lands sought to be partitioned, that partition would be such an alienation as is interdicted by the Act of Congress requiring an order of the county court having jurisdiction of the estate to validate an alienation by a full-blood Indian heir of allotted lands, * * * the district courts of this state are without jurisdiction to partition allotted lands of full-blood Indian heirs of the Five Civilized Tribes, inherited from a full-blood Indian of one of such tribes, and the court did not err in sustaining the demurrer to the petition."

In Collins Investment Co. v. Beard, 46 Okla. 310, 148 Pac. 846, it is said:

"When the question of the removal of restrictions from allotted lands or the right of alienation of such lands or the power of alienation is involved, we must look to the

acts of Congress and to those acts and laws alone."

Defendants rely strongly upon Wiley v. Edmondson. 43 Okla. 1, 133 Pac. 38, wherein it was held:

"A judgment rendered by a court having jurisdiction of the subject-matter and the parties is a bar to any future suit between the same parties, or their privies, upon the same cause of action, so long as it remains unreversed, and not in any way vacated or annulled."

In the instant case, defendants contend that the decree of partition, not having been appealed from, became final and divested the plaintiff of any interest in the lands allotted or awarded by such decree to Martha Naharkey, but with this we cannot agree, as the partition proceeding was an alienation of restricted lands under the decisions herein cited, and was in violation of the Act of Congress of April 26, 1906, and the United States Court was without jurisdiction of the subject-matter of the action, and was null and void, and to this extent the judgment of the trial court should be affirmed.

The defendants assign as error the rendition of judgment against O. K. and Bessie Eysenbach in favor of the plaintiff in the sum of $280 as rents and profits from the lands involved for the years 1907 to 1914.

Upon the death of Moses Naharkey, his surviving spouse, Martha, became entitled, under the laws then in force, to a dower interest. or upon wavier of dower interest, she became entitled to a child's portion, and thus became a tenant in common with Sammie Naharkey of the lands in controversy, and this tenancy in common extended to the Eysenbachs and Hardesty.

There is nothing in the record to show the plaintiff ever made a demand for possession, or for rents or profits, or that he was ever excluded from the lands by the Eysenbachs during the period of 1907 to 1914, or hindered from entering upon his ¾ interest if he was the owner thereof. On the other hand it is testified by the Eysenbachs that they never received one dollar rents or profits from the land during that period.

We, therefore, are of opinion that the judgment for $280 was erroneous. In Vol. 7, Ruling Case Law, section 24, pp. 829-880 it is said:

"The decided preponderance of the authorities, both in England and in America, affirms the right of each cotenant to enter upon and hold possession of the common property, and to make such profit as he can by proper cultivation or other usual means of acquiring benefit therefrom, and to retain the whole of such benefits, provided that in having such possession, and in making such profits, he has not been guilty of an ouster of his cotenant, nor hindered the latter from entering upon the premises and enjoying them as he had a right to do. One tenant in common cannot be deprived of the right to use and enjoy the common property, because his cotenants are willing to let the property lie idle. or fail or refuse to set up any claim to it; and while he is thus left in sole possession, he may manage the common property in any way he pleases, provided he does not injure his cotenants, He may cultivate or improve the property, and he is permitted to enjoy the fruits of his own labors, unless that result involves some infringement upon the rights of his cotenants who stand off and forbear to make any use of the property. The tenant out of possession may at any time assert his right to share in the possession, or he may have the property partitioned by a division among the cotenants in severalty, each taking a distinct part according to the extent of his interest. He cannot complain of the mere possession of a cotenant so long as he refrains from setting up any claim to share in that possession."

In Brown v Thurston et al. (Kan.) 109 Pac. 784, it is held:

"The sole question in the case as stated by counsel is this: Can one tenant in common who occupies the premises be compelled to pay rent to his cotenants who are not occupants? It is conceded that the appellant and the appellees own the property as tenants in common. As we understand the rule, it is that each tenant had the right to occupy the premises while it is undivided, and, until divided, neither of them is entitled to recover rent from one who occupies, unless such occupant excludes his cotenants from possession. Scantlin v. Allison, 32 Kan. 376, 4 Pac. 618; 23 Cyc. 491; 17 A. & E. Encycl. of L. 692; Hamby v. Wall, 48 Ark. 135, 137, 2 S. W. 705, 706 (3 Am. St. Rep. 218, 219). There is nothing here which shows exclusive possession on the part of appellant, or that the appellees might not occupy the property at the same time. The appellant seems to have been rightfully in possession, and, until she does something to exclude her cotenants from occupancy, she cannot be compelled to pay rent to them. In the case last cited, the court said: 'It is a well-settled principle of the common law that the mere occupation by a tenant of the entire estate does not render him liable to his cotenant for the use and occupation of any part of the common property. The reason is easily found. The right of each to occupy the premises is one of the incidents of a tenancy in common. Neither tenant can lawfully exclude the other. The

occupation of one so long as he does not exclude the other, is but the exercise of a legal right. If for any reason one does not choose to assert the right of common enjoyment, the other is not obliged to stay out; and, if the sole occupation of one could render him liable therefor to the other, his legal right to the occupation would be dependent upon the caprice or indolence of his cotenant, and this the law would not tolerate, 4 Kent's Com. 369; Freeman on Cotenancy, 258; Everts v. Beach, 31 Mich. 136, 18 Am. Rep. 169; Isreal v. Isreal, 30 Md. 120, 96 Am. Dec. 571; Fielder v. Childs, 73 Ala. 567; Hause v. Hause, 29 Minn. 252 (13 N. W. 43); Reynolds v. Wilmeth, 45 Iowa, 693; Pico v. Columbet, 12 Cal. 414, 73 Am. Dec 550; Becnel v. Becnel, 23 La. Ann. 150.'"

We feel the rule stated in the authorities quoted from, is the proper rule applicable to the facts in the case at bar. A different rule, and the one contended for by plaintiff, would be manifestly unjust and inequitable, and would place a premium upon indolence, and would doubtless, in numerous cases, result in permitting agricultural lands to lie idle and unproductive where held in common if the industrious and frugal cotenant knew that after years of toil he would be compelled to share the fruits of his toil with his lazy and indolent cotenant. The law will place no such premium upon indolent and lazy cotenants, but will reward the thrifty and industrious by permitting them to retain the fruits of their industry gleaned from lands held in common, where the cotenant was never excluded from the land; never attempted to use the land or assert his right thereto. Under no theory in this case could the Eysenbachs be chargeable with the rents and profits during the years 1907 to 1914, as the evidence discloses they did not receive any, and if two persons holding lands in common elect to permit the lands to remain idle, neither receiving profits therefrom, one may not recover from the other anything for rents or profits, and that portion of the judgment of the lower court in awarding the plaintiff judgment against O. K. and Bessie Eysenbach in the sum of $280 should be reversed.

The defendants' last assignment of error is based upon the rendition of judgment against the defendants Eysenbach in favor of the defendant Hardesty, for $1,600, being the purchase price of the land, $1,000 for improvements placed thereon, and $400 attorney's fees.

With reference to the first item, it may be said the plaintiff is claiming but a ¾ interest in the land conveyed by Eysenbach to Hardesty, and there is no dispute as to Hardesty's ownership of the remaining ¼ interest.

In Depuy v. Selby, 76 Okla. 307, 185 Pac. 107, Mr. Justice Johnson, discussing the statutes relative to the measure of damages for breach of warranty, says:

"Under this section of our statutes the measure of damages for a partial breach, is such portion of the purchase price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property, with interest thereon for the term during which the grantee derived no benefit from the property, not exceeding six years, and any expense incurred by the grantee in defending his possession."

We consider the rule thus established wholesome and equitable and have no inclination to depart therefrom.

The same rule applies to the judgment of $1,000 for improvements with equal or perhaps greater force, for who can say that in the ultimate disposition of the land, and its partition between the parties, the lands containing the improvements might be allotted to the defendant Hardesty, and he would be possessed of the improvements, and would have also recovered the value of the same from the defendant Eysenbach?

The most Hardesty could recover would be three-fourths the value of the improvements, and the court erred in rendering judgment against Eysenbach in favor of Hardesty in the sum of $1,000 for improvements.

The awarding of judgment of $400 as Hardesty's attorney's fees is clearly erroneous. Section 5263, Comp. Stat. 1921, provides:

"In all cases where an action is brought against a grantee to recover real estate conveyed to him by warranty deed, he must notify the grantee or person bound by the warranty that such suit has been brought, at least twenty days before the day of trial, which notice shall be in writing and shall request such grantor or other person to defend against such action," etc.

Section 5264, Comp. Stat. 1921, provides:

"Where any grantor applies in any action to defend his warranty, or fails to appear after due notice, the court shall determine all the rights of all the parties, and in case the recovery is adverse to the warranty, the warrantee shall recover of the warrantor the price of the land paid for the conveyance at the time of the warranty, the value of all improvements lost, if any, and all sums necessarily expended, including a reasonable attorney's fee, and interest at the rate of ten per centum per annum on all sums so paid from the time of payment."

It is admitted that notice of the suit was served on the warrantor, who thereupon came in and moved for leave to intervene. The warrantor employed able counsel and it is admitted he paid them a large sum of money to defend his warranty. From an examination of the brief of 122 pages filed by them, disclosing careful research. and an able presentation of the facts and law, it is doubtful if the warrantor could have secured more able counsel.

We are, therefore, contrained to hold that when the warrantor comes in and employs eminent and able counsel to defend his warranty, he is relieved from paying the counsel fees contracted for by the warrantee, and it is only where the warrantor fails to defend that he may be charged with the reasonable attorney's fees paid by his warrantee.

For the reasons herein stated, the judgment of the trial court should be affirmed in its holding that the judgment of the United States Court in the partition proceedings instituted in 1907 are null and void for that the said court had no jurisdiction of the subject-matter of the action, and in all other matters the judgment of the trial court should be reversed and remanded with instructions to grant the defendants a new trial in conformity with this opinion.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. §§ 79, 91; (2) 31 C. J. § 80; (3) 38 Cyc. p. 63; (4) 15 C. J. §§ 224, 237; (5) 15 C. J. § 224.