## NEAL v. TRAVELERS INS. CO.

No. 27264.   June 18, 1940.

Rehearing Denied Sept. 10, 1940.

Opinion on Rehearing and Rehearing Denied Oct. 29, 1940.

*106 P. 2d 811.*

Tom G. Haile, of McAlester, for plaintiff in error.

Eugene S. Wells, of Oklahoma City, and Allen Wright, of McAlester, for defendant in error.

Cornish & Cornish, of McAlester, amicus curiae.

OSBORN, J.   This action was commenced in the district court of Pittsburg county by Minnie Neal, a full-blood Choctaw Indian, against the Travelers Insurance Company and others to recover possession and to quiet title to the allotment of her deceased child of whom she is the only heir. A demurrer was sustained to her evidence, and she has appealed. The parties will be referred to as they appeared in the trial court.

There is no dispute as to the facts. Calvin Hicks Neal, a minor half-blood Choctaw Indian, died in 1901 without issue. Subsequent to his death there was selected for him and allotted to his heirs the land involved in this action. Under the laws of descent and distribution of the state of Arkansas, then in force, Minnie Neal, his mother, a full-blood Choctaw Indian, plaintiff herein, was his sole heir. On September 26, 1923, plaintiff and her husband executed a real estate mortgage to defendant. On April 16, 1931, in a foreclosure proceeding in the district court of Pittsburg county, a judgment was entered foreclosing said mortgage. On December 23, 1931, a sheriff's deed was executed and delivered to the purchaser, defendant herein, and duly recorded. On April 5, 1935, plaintiff commenced this action to quiet title and determine heirs of Calvin Hicks Neal, deceased. On July 23, 1935, defendant filed its answer to the plaintiff's petition asserting its title by reason of the mortgage foreclosure proceedings and the sheriff's deed, and specifically pleaded the judgment of foreclosure as res judicata of the issues presented herein.

The first contention of plaintiff in error is stated as follows:

"Did the trial court have jurisdiction to declare the unapproved mortgage of Minnie Neal, a full-blood Indian, valid? Would the foreclosure proceedings be subject to collateral attack?"

Section 9 of the Act of May 27, 1908 (35 Stat. 312), in part, provides:

"* * * Provided, That no conveyance of any interest of any full-blood Indian

heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * *"

The record before us relating to approval or lack of approval of said mortgage is substantially as follows: It is stipulated that the lands in controversy were allotted to Calvin Hicks Neal, a half-blood Indian, whose mother was Minnie Neal, enrolled as a full-blood, her husband, W. A. Neal, not being enrolled; that Minnie Neal made two deeds to her husband prior to the mortgage in controversy and then executed said mortgage to the Travelers Insurance Company, and that no order of the county court or of any court approving either of said deeds or said mortgage is of record in the office of the county clerk of Pittsburg county. Both Minnie Neal and W. A. Neal testified that none of said instruments were approved, to their knowledge, and that they never made application to have same approved and never appeared before any county court for the purpose of having the same approved. Floyd Neal testified that with an attorney he checked the records in the office of the court clerk of Atoka county, where proceedings were pending on the estate of Calvin Hicks Neal, deceased, and that no order approving either the deeds or the mortgage appeared of record; that he learned that some of the general records of the court and county had been destroyed by fire. All of this evidence was introduced over the objection of defendant in error and no affirmative evidence was introduced by defendant in error to show the approval of any of said instruments. Indeed, it is not affirmatively contended that any of said instruments were approved, but defendant in error contends that by reason of the judgment of foreclosure above mentioned, evidence aliunde the record constituting the judgment roll is inadmissible to show the lack of approval of said instruments, the presumption being from the rendition of judgment in the foreclosure case that the court found all the essentials to maintain its jurisdiction to

render the judgment relied upon. The court in rendering judgment herein recited the following:

"* * * That this action was commenced more than three years subsequent to the rendition of said judgment and is a collateral attack thereon. The court further finds that the judgment roll supporting said judgment as introduced in evidence is regular upon its face upholding the matters and things decided therein and that no extrinsic evidence can be considered by the court in support of the petition of the plaintiff in attacking said judgment and that same has become res adjudicata as to the matters therein decided, among which is the validity of the mortgage therein foreclosed."

In the case of Brink v. Canfield, 78 Okla. 189, 187 P. 223 (Cert. Denied 64 L. Ed. 1029), it was sought to set up a former adjudication against a deceased full-blood Indian heir during his lifetime as a bar to a claim of inheritance by his full-blood heirs of lands allotted to a full-blood member of the Creek Tribe of Indians. In that case there was involved only the right of Lusanna Brink, mother of one Wallace Jack, deceased, to recover a portion of certain lands which had been allotted to Susie Crow, deceased, half-sister of Wallace Jack. It was contended that Wallace Jack during his lifetime had conveyed his portion of the inheritance. It appears that on January 24, 1913, Wallace Jack had instituted a suit against some of the defendants in error, in ejectment, to quiet title, and for damages for unlawful detention of the premises. On February 17, 1913, Jack filed in the suit his dismissal thereof with prejudice, and executed a deed of conveyance to one of the defendants. On May 3, 1913, he filed a motion to vacate his dismissal and to reinstate his cause of action on the ground that he was intoxicated at the time of the filing of the dismissal. On May 31, 1913, a motion to set aside his dismissal and to reinstate his cause of action was overruled and no appeal therefrom was ever prosecuted. The dismissal of the suit and the order overruling the application to reinstate

were set up in bar of the claim of the heir, Lusanna Brink. In determining the legal effect of the judgment it was said:

"* * * At the time Jack's suit was instituted, there was but one way in which he could alienate his title to the lands which he had inherited, and that was by a deed of conveyance, approved by the court having jurisdiction of the settlement of the estate of the deceased, allottee. 35 Stat. at L. 312, c. 199. While the restrictions had been removed from the lands in the sense that Jack had the power of alienation, it could only be consummated and made effectual when approved as pointed out in the foregoing Act of Congress. Without the making of a deed, and its approval, no judgment could be rendered, regardless of the character of the suit or the issues joined, whereby Jack's title could be divested, he being a full-blood Creek Indian, and the lands being lands allotted to his kinsman, through whom, upon the death of succeeding heirs, his title was derived. Nor could the judgment be given effect in a subsequent legal proceeding, either as an estoppel or as constituting a former adjudication of his title. In other words, insofar as the title to such lands was concerned, the judgment was a nullity, because of a want of power in the court to make it. Any other view would mean the circumvention of the statute prescribing the manner in which such lands may be alienated, and make nugatory the acts of Congress prescribing the manner and terms of conveyance of allotted lands inherited by full-blood Indians."

In the case of Tidal Oil Co. v. Flannagan, 87 Okla. 231, 209 P. 729 (writ of error dismissed, 263 U. S. 444, 68 L. Ed. 383, 44 S. Ct. 197), it was held:

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance.

"The district courts of this state are without jurisdiction to enter a valid judgment divesting an Indian minor allottee of title to his allotted lands by entering a decree quieting title in a party asserting title to such lands under void conveyances executed in violation of a federal statute prescribing the manner by which title may be acquired to such lands. The title to such lands may be acquired only under a regular probate sale as provided for by law."

In the cases of Welch v. Commercial National Bank, 90 Okla. 221, 217 P. 476; Bucy v. Corbin, 101 Okla. 124, 223 P. 134, and Johnson v. Ray, 101 Okla. 160, 222 P. 667, this court sustained a contention similar to that of defendant in this case.

The three cases which we have just referred to were expressly overruled by this court in the case of Southwestern Surety Insurance Co. v. Farriss, 118 Okla. 188, 247 P. 392. Therein it was held:

" 'Jurisdiction of the subject is the power conferred upon courts by law to hear a particular class of cases, or to determine controversies of a specified character. This jurisdiction is indispensable to the validity of a judgment, and where a court has no jurisdiction of the subject-matter, the judgment is void, and may be so treated in collateral proceedings. It may be added that jurisdiction of the subject-matter cannot be conferred by the assent or neglect of the parties, nor will any amount of judicial discretion of a court supply a defect of want of jurisdiction in a case.' * * *

"There can be no question in this state at this late day of the supreme power of Congress to legislate concerning Indians and their property. Where Congress has spoken, and in effect has denied to every court the power to determine the validity of a conveyance of title or of any interest in the lands of minor Indians, by declaring all such conveyances 'absolutely null and void' if not made in the course of probate proceedings, any judgment purporting to establish the validity of such a prohibited conveyance is coram non judice and void. Being so, the lack of judicial power inheres in every stage of the proceedings by which color of authority is sought to be imparted to the void

judgment, and a subsequent order by the same court denying a motion to vacate such void judgment is likewise void for the same reasons. * * *"

Thereafter the case of Bilby v. Malone, 130 Okla. 217, 266 P. 760, was decided. The facts in that case are practically identical with the facts involved in the instant case. Therein the court reaffirmed the rule announced in the case of Brink v. Canfield, supra, and after quoting at length from that opinion, it was held:

"The district or superior courts of this state are without jurisdiction to enter a valid judgment divesting a full-blood Indian of title to inherited, allotted, restricted Indian lands by entering a decree quieting title in a party asserting title to such lands under void conveyance executed in violation of a federal statute prescribing the manner by which title may be acquired in such lands."

Other cases in harmony with the rule so announced are as follows: Brown v. Minshall, 83 Okla. 98, 202 P. 1037; Merchants' & Planters' Nat. Bank v. Ford, 93 Okla. 289, 220 P. 833; Bilby v. Harrison, 100 Okla. 67, 227 P. 407; Balthrop v. Clark, Adm'r, 94 Okla. 294, 222 P. 520; Eysenbach v. Naharkey, 110 Okla. 207, 236 P. 619; Cotton v. McClendon, 128 Okla. 48, 261 P. 150.

We have referred to the authorities in chronological order, directing attention to the fact that at one time the court adopted the rule contended for by defendant relating to collateral attack on judgments purporting to validate conveyances made in contravention of the federal statutes, but thereafter specifically overruled the cases applying the rule to such judgments and returned to its former position that such judgments, being void for want of judicial power to render them, are not impervious to collateral attack.

It is urged that the federal courts have adopted a view which is contrary to the view of this court regarding its jurisdiction or power to validate a conveyance made by an Indian restricted under the acts of Congress. It is pointed out that the case of Fulsom v. Quaker Oil Co., 35 F. 2d 84, holds that full-blood Creek Indians are authorized under article 2, section 6, of the Oklahoma Constitution to bring actions in the state courts and are bound by a judgment therein just as any other litigant, after availing themselves of the privilege of submitting themselves and their cause to the jurisdiction of the state court. In that case three full-blood Creek Indians instituted an action to cancel a deed executed by them to inherited land. It appeared that they had previously instituted a similar action in the district court of Creek county. A judgment was rendered against them, the cause was appealed to this court and the judgment affirmed. See 124 Okla. 260, 256 P. 727. It was held by the federal court that the judgment of the state court was res judicata. In that case this court held that the deed was properly approved as required by the acts of Congress. The sole ground upon which it was sought to avoid the effect of the conveyances was that the deed was obtained by fraud. It does not appear that the federal court was concerned with a judgment of the state court attempting to validate a conveyance executed contrary to the provisions of an act of Congress.

We are referred to the case of Mars v. McDougal, 40 F. 2d 247, wherein it is held that a Creek Indian, having availed herself of the right to bring suit to establish an interest in an Indian allotment in the state court, is bound by the decree, and that the decree, whether right or wrong, is res judicata until set aside in a proper proceeding. That was a case prosecuted by the executor of the estate of Lusanna Brink and others claiming as her successors to recover a one-half interest in the allotment of one Susie Crow, a Creek allottee. Said allotment was the subject of extensive litigation. In the case of Brink v. Canfield, 78 Okla. 189, 187 P. 223, it was held that Lusanna Brink was the owner of a one-eighth interest in such allotment subject to a

prior conveyance to Pryor & Rockwood, her attorneys. On December 18, 1918, she conveyed to H. U. Bartlett, by deed approved by the county court of Creek county, all of her interest in said allotment. Subsequently she instituted suit in the district court of Creek county to set aside said deed on the ground of mental incapacity, inadequacy of consideration, and fraud. The court in that action found against her. Thereafter the United States, as guardian for Lusanna Brink, commenced suit No. 3191 in equity against those who claimed through Lusanna Brink, and thereafter dismissed said cause with prejudice. It was held that the former adjudication in the district court of Creek county and the dismissal in the federal court were res judicata of the rights of Lusanna Brink. It is noted that the issues submitted were those of fraud, mental incapacity, and inadequate consideration, and that no contention was made that the conveyances which were attacked were invalid for lack of compliance with any federal statute.

We are also referred to the case of Vinson v. Graham, 44 F. 2d 772. That was an action by the administrator of the estate of Dorsey Fife, to cancel certain conveyances affecting title to land allotted to him as a part of his surplus allotment. It is alleged that he was a full-blood restricted Indian and that all of his lands were inalienable; that deeds formerly executed by him were therefore null and void. It appears that the rolls did not disclose his degree of Indian blood. On January 2, 1909, the United States commenced an action in the federal court in his behalf against his grantee and others to cancel and set aside the deeds executed by him and other deeds to other lands, which suit was No. 444 Equity. Thereafter the suit was dismissed. The federal district court found that Fife was a three-quarter blood Indian enrolled as an adopted Seminole, but that he was barred from prosecuting the action by reason of the decree in No. 444 Equity under the doctrine of res judicata. In this connection the court said:

"As their first proposition, counsel for appellants assert that a decree of a court cannot remove restrictions on alienation by an Indian, imposed by acts of Congress, or render valid a deed made in violation of such restrictions. In support of this proposition, they cite and rely upon Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 P. 729; Cotton v. McClendon, 128 Okla. 48, 261 P. 150; Bell v. Fitzpatrick, 53 Okla. 574, 157 P. 334; Crow v. Hardridge, 73 Okla. 136, 175 P. 115; Bilby v. Malone, 130 Okla. 217, 266 P. 760; Brink v. Canfield, 78 Okla. 189, 187 P. 223; and Goodrum v. Buffalo (C. C. A.8) 162 F. 817.

"In the first four of the cases cited above, it was held that each of the judgments, relied upon as an estoppel, had been rendered by a court which had no jurisdiction of the subject-matter of the action, namely, the real property of a restricted Indian minor. The two Oklahoma cases last cited involved estates of Indian heirs and it was held that the court was without jurisdiction to enter the judgments relied on as an estoppel. However, the question here presented involves not the jurisdiction of the Oklahoma courts, but the jurisdiction of the courts of the United States. Does a United States District Court for the proper district, in a suit brought by the United States (the defendant having been brought into court by proper process), have jurisdiction to determine whether a deed of an Indian allottee was made and delivered in violation of restrictions imposed by Congress? That such a question is a proper one for judicial inquiry and that a United States District Court for the proper district has jurisdiction in such a case is conclusively settled by an unbroken line of authorities. (Citing cases.)"

It was held that when the rolls of the Dawes Commission are silent as to the quantum of Indian blood of an allottee, such quantum may be shown by proof aliunde of such rolls, and if such proof establishes that the allottee was a three-quarter blood Indian, the questions as to the degree of blood and as to whether or not the lands were restricted by the acts of Congress are justiciable questions which the court had power to decide. It will be noted that the fed-

eral court in this case was careful to distinguish said case from those which we have heretofore cited. It further appears that the question as to whether or not the lands of Dorsey Fife were alienable was dependent upon ascertaining his degree of Indian blood, which was, in fact, the determinative issue. Such a determination of fact in a proper case by a court having jurisdiction would clearly be res judicata.

It is thus noted that when the rules of law announced by the federal courts are confined to the fact situations to which they were applied, there is no conflict between the federal authorities and our own.

In the case of Privett v. United States, 256 U. S. 201, 65 L. Ed. 889, the United States brought an action to cancel conveyances made by heirs of a Creek Indian of land allotted to him as a homestead. As a matter of defense a prior suit was relied upon. Therein the court said:

"The reliance on the decision in the prior suit is ill-founded. That suit was between the heirs and one who was claiming under these conveyances, the United States not being a party, and the decree therein pronounced the conveyances valid. This suit is brought by the United States in virtue of its interest in maintaining the restriction and safeguarding the Indian in the possession and enjoyment of the lands allotted out of the tribal domain. As yet the Indians have not been fully discharged from the guardianship of the United States. 'During the continuance of this guardianship, the right and duty of the nation to enforce by all appropriate means the restrictions designed for the security of the Indians cannot be gainsaid. While relating to the welfare of the Indians, the maintenance of the limitations which Congress has prescribed as a part of its plan of distribution is distinctly an interest of the United States.' Heckman v. United States, 224 U. S. 413, 437, 56 L. Ed. 820, 829, 32 Sup. Ct. 424. See also La Motte v. United States, 254 U. S. 570, ante, 410, 41 Sup. Ct. Rep. 204. 'And it is no longer open to question that the United States has

capacity to sue for the purpose of setting aside conveyances of lands allotted to Indians under its care, where restrictions upon alienation have been transgressed . . . authority to enforce restrictions of this character is the necessary complement of the power to impose them. It necessarily follows that, as a transfer of the allotted lands contrary to the inhibition of Congress would be a violation of the governmental rights of the United States, arising from its obligation to a dependent people, *no stipulations, contracts, or judgments rendered in suits to which the government is a stranger can affect its interest.*' Bowling v. United States, 233 U. S. 528, 534, 58 L. Ed. 1080, 1083, 34 Sup. Ct. Rep. 659. * * *'"

It is noted that the government is not bound by a prior decree for the reason that it was not a party to the prior action and that a transfer of lands contrary to the inhibition of Congress is thereby a violation of the rights of the government. But can it be said that the courts may not consider the governmental rights thus involved except in cases where the government is a party? We deem it not only proper but necessary that such rights should be given due consideration in all cases whether the government prosecutes the suit in its capacity as guardian for the Indian citizen or whether the citizen prosecutes his own suit. The government has no pecuniary interest in any such suit. The Indian citizen is the real party in interest and his rights may not be properly determined without due consideration of all the elements involved.

Much of the confusion heretofore existing with regard to the judicial power of the courts in dealing with conveyances of land restricted by the acts of Congress would have been avoided if the court had given due consideration to the various elements that enter into the judicial power of the state courts in this regard. In the case of Molone v. Wamsley, 80 Okla. 181, 195 P. 484, it was said:

"Section 1 of the Enabling Act under which Oklahoma was admitted into the Union (34 Stat. L. 267) provides:

" 'That nothing contained in the state Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this act had never been passed.'

"The constitutional convention of Oklahoma, by a proper resolution, irrevocably accepted the terms of the Enabling Act, and it is apparent under the provisions of the Enabling Act, Congress specifically reserved the right to exclusively legislate with respect to the Indian Tribes located in the state of Oklahoma, and regulate the sale of their allotted lands. In determining the power of members of the Five Civilized Tribes to alienate their lands, we must look only to the laws of Congress."

It thus appears that Congress has narrowed the way to validity of a conveyance by an Indian of the full blood and the gate to validity has been placed in the "county court having jurisdiction of the settlement of the estate" rather than in the district courts of the state. By the process of making a specific provision, it has denied the existence of other devious ways of divesting full-blood Indians of their lands derived through the "allotment" plan of the government. The conditions upon which such restricted wards of the government may alienate their lands constitute the supreme law of the land, and state courts, organized under the sanction of the Constitution, are not, and cannot be, empowered to violate the supreme law of the land. Kalb v. Fuerstein (U. S.) 60 S. Ct. 343.

In the case of U. S. v. Walker, 109 U. S. 258, 266, 3 Sup. Ct. 277, 282, 27 L. Ed. 927, it was said:

"Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void."

In the case of Goodrum v. Buffalo (C.C.A. 8th) 162 F. 817, it was held that a judgment rendered in the United States Court in the Indian Territory adjudging the validity of a conveyance of lands by a restricted Quapaw Indian was subject to collateral attack for various reasons, one of them being stated as follows:

"* * * Because the United States Court in the Indian Territory, being itself a creature of Congress, with limited jurisdiction, was not invested with jurisdiction to extend by mere decretal order a power of alienation over such lands denied by another act of Congress to such Indians."

In view of the above-quoted provisions of the Enabling Act and the acceptance thereof by the Constitutional Convention, the power to regulate and legislate with regard to the Indian citizens of Oklahoma was, by consent of the state, expressly reserved to Congress. It was within the exclusive power of Congress to determine the conditions upon which lands might be alienated, and such power was expressly withheld from the state, the creator of the state courts. Since the courts could not become invested with greater powers than their creator, the power to validate a conveyance of Indian land contrary to the express provisions of the acts of Congress was withheld from every court of this state except as designated by Congress. It appears that the mortgage involved herein was never approved as required by the mandatory act of Congress. A district court of this state was wholly without power to declare said instrument to be valid.

Defendant's second proposition is stated as follows:

"Is the foreclosure judgment immune to collateral attack for the reason that it does not show the degree of blood of the defendant; is the plaintiff in this case estopped from offering evidence aliunde?"

The principal portion of the defendant's argument is devoted to the above

proposition. The question was squarely presented and determined in the case of Naharkey v. Sand Springs Home, 177 Okla. 371, 59 P. 2d 289 (Cert. denied 81 L. Ed. 433), wherein it was held that the failure of the judgment roll to disclose the fact which rendered the former proceeding invalid did not prevent a successful collateral attack. Therein we said:

"It is also asserted that the want of jurisdiction of the United States Court for Indian Territory does not appear on the face of the judgment roll, and therefore a successful collateral attack cannot be maintained. This contention is based on the fact that while the judgment roll of the case in that court reflects the fact that the parties litigant were citizens of the Creek Nation, it does not reflect the quantum of Indian blood. It is argued that in order for the judgment to be void and thus subject to a successful collateral attack, the fact that Sammie Naharkey was a full blood would have to affirmatively appear from an inspection of the judgment roll. This for the reason that the quantum of Sammie's Indian blood is the basic fact which destroys the judgment. The question is one of grave concern. If it were one of first impression in this jurisdiction, it would merit a careful and exhaustive analysis. However, the contention is foreclosed by the prior decisions of this court. While the precise question was not discussed in Eysenbach v. Naharkey, supra, this same judgment was declared void in that case. The attack therein was also collateral. In the case of Lewis v. Gillard, 70 Okla. 231, 173 P. 1136, supra, it was decided that the failure of the judgment roll to disclose that heirs were full-blood Indians, the fact which made a partition proceeding invalid, did not prevent a successful collateral attack. The decision in that case was based upon the earlier case of Barnard v. Bilby, 68 Okla. 63, 171 P. 444, wherein upon collateral attack a probate sale of the allotted lands of a minor Creek freedman was declared invalid, notwithstanding the proceedings did not reflect on their face that the lands involved were those allotted to a minor Creek freedman.

"It should be remembered in considering the weight of the foregoing deci-

sions (especially the one last mentioned) and their controlling importance, that in this state county courts are, in probate matters, courts of general jurisdiction (Tiger v. Drumright, 95 Okla. 174, 217 P. 453), which precludes a distinction upon the theory that upon collateral attack different rules govern the judgment of a court of limited jurisdiction. Perhaps the true basis for considering extrinsic facts not appearing on the face of the judgment roll in determining the validity of final judgments affecting the lands of Indians not alienable by reason of restrictions, is that such restrictions are imposed by the federal laws defining the public policy of the nation with respect to and for the protection of a class of individuals regarded as wards of the government, and because a recognition of the validity of such judgments would make the courts an instrumentality through which the end intended to be accomplished would be defeated. See Dial v. Kirkpatrick, 168 Okla. 21, 31 P. 2d 591. Perhaps, too, clarity of legal thought would be promoted by a frank judicial recognition of the existence of an exception in this class of cases to the general rules governing collateral attack upon judgments upon which the defendant herein relies. That those rules are not without exception is undeniable. Personally, the writer of this opinion is not altogether in sympathy with some of the exceptions recognized or applied without recognition. See dissents in Seal et al. v. Banes et al., 168 Okla. 550, 35 P. 2d 704; Excise Board of LeF'lore County v. K. C. So. Ry. Co., 173 Okla. 238, 47 P. 2d 580.

"In view of our previous decisions, we hold that the failure of the judgment roll of the partition case in the United States Court for the Western District of Indian Territory to disclose the quantum of Indian blood of Sammie Naharkey does not prevent a successful collateral attack thereon."

It is sought to distinguish the above-cited case by reference to section 2 of the Act of Congress approved April 12, 1926, which provides as follows:

"The statutes of limitations of the state of Oklahoma are hereby made and declared to be applicable to and shall have full force and effect against all restricted Indians of the Five Civilized

Tribes, and against the heirs or grantees of any such Indians, and against all rights and causes of action heretofore accrued or hereafter accruing to any such Indians or their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the state of Oklahoma, and may be pleaded in bar of any action brought by or on behalf of any such Indian, his or her heirs or grantees, either in his own behalf or by the government of the United States, or by any other party for his or her benefit, to the same extent as though such action were brought by or on behalf of any other citizens of said state."

It is argued that, since the statutes of limitations of the state of Oklahoma are now in effect against the restricted Indians of the Five Civilized Tribes and that said statute was not involved in the case of Naharkey v. Sand Springs Home, supra, the rule announced in said case is not applicable to the situation here presented. It is further argued that under the provisions of section 556, O. S. 1931, plaintiff's cause was barred at the expiration of three years from the date of the foreclosure judgment. In this connection we direct attention to section 563, O. S. 1931, 12 Okla. Stat. Ann. § 1038, which provides that "a void judgment may be vacated at any time, on motion of a party, or any person affected thereby." As heretofore pointed out, the judgment of foreclosure of the mortgage, determining in effect that the mortgage was valid, is void for lack of judicial power in the court to render it; therefore, the quoted portion of section 563, supra, is applicable, and plaintiff is not now barred by the statutes of limitation of this state from attacking the same.

The trial court erred in sustaining a demurrer to plaintiff's evidence. The judgment, therefore, is reversed and the cause remanded, with directions to take further proceedings consistent with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, HURST, and DANNER, JJ., concur. GIBSON and DAVISON, JJ., dissent.

On Rehearing.

DAVISON, J. (dissenting). On rehearing I find myself unable to concur in the conclusion of my associates. The question is of sufficient magnitude to warrant an expression of individual views.

The case involves a collateral attack upon the judgment of a court of general jurisdiction, holding valid a conveyance of restricted Indian lands. The judgment was rendered in 1931 by the district court of Pittsburg county. No appeal was taken and it became final.

We now in another and different action hold that that judgment was void because the court misapprehended the facts or erroneously applied the law to the facts as proven.

The specific question for decision in the case at bar is whether a final and unappealed from judgment of a district court of Oklahoma foreclosing a real estate mortgage, where the defendant was regularly served with summons and had her day in court, could be collaterally attacked on the ground that the mortgage foreclosed was void because the mortgagor was a full-blood Choctaw Indian and the mortgage covered the allotment of a deceased minor half-blood Choctaw child of said mortgagor, said allotment having been inherited by the mortgagor from the allottee, the mortgage not having been approved by the proper, or any, county court.

It is too well settled to require the citation of authority that in order for a judgment to be void and subject to collateral attack, there must have been at the time of its rendition a want of jurisdiction by the court where it was rendered.

Jurisdiction is the power to decide and comprehends the decision of questions of law as well as fact. The State of Rhode Island v. The Commonwealth of Mass., 9 L. Ed. (U.S.) 1233; Board of Commissioners v. Platt, 79 Fed. 567; Clevenger et al. v. Figley et al. (Kan.) 75 P. 1001; Fauntleroy v. Lum, 210 U.

S. 230, 28 S. Ct. 641, 52 L. Ed. 1039; Burnet v. Desmornes y Alvarez, 226 U. S. 145, 33 S. Ct. 63, 57 L. Ed. 159. The existence of the power does not depend upon the subsequent correct exercise thereof, for to make the existence of the power dependent upon the correctness of the decision rendered is to deny the jurisdiction at its inception.

A district court of this state by its judgment in a former action has declared a conveyance of restricted Indian lands valid. We say it had no jurisdiction to do so, or, in other words, that it had no power to decide the question, yet paradoxically, we ourselves, exercising appellate jurisdiction only on appeal from the same district court, assume the power to decide the same question and decide it differently. Our jurisdictional power to decide this question is no broader in scope than that of the trial tribunal. If it was wanting in judicial power to decide the question one way, we are likewise without jurisdiction to decide it the other.

There is some slight difficulty in applying the law relating to collateral attack to this case because of the "peculiar twist" in the line of decisions relating to this class of cases.

Some of our decisions have announced the theory that, since a conveyance of Indian land contrary to restrictions cannot be legally made, validity to such a conveyance cannot be imposed by judicial decision. The reasoning of the cases is entirely fallacious, since it completely overlooks the force and effect of judgments. In order to correctly say that a judgment erroneously declaring an invalid deed or mortgage to be valid is void for want of jurisdiction, it is first essential to say that the court has no power to pass on the question at all; for the power to pass on the question connotes the power to decide it erroneously. The jurisdiction of a court includes the power to decide, and the power does not depend upon the correctness of the decision. See discussion and authorities in Protest of Gulf Pipe Line Company,

Seminole County et al. v. Gulf Pipe Line Co., 168 Okla. 136, 32 P. 2d 42.

This criticism of the rule applied to judgments on this question may seem belated in view of the lapse of time since this court first announced a contrary theory in the cases cited in the majority opinion. However, I wish to call attention to the fact that those discussions are based upon the extraordinary force that we have seen fit to give to federal legislation. Ordinarily, it is the rule that the federal court "bows" to us on questions relating to the construction and effect of state statutes, while we reciprocate in kind where federal statutes are involved. At the time we first announced the theory upon this point the federal courts had not expressed themselves. They now have. In Vinson et al. v. Graham et al., 44 Fed. 2d 772, this question was before the court, and the *accepted principles of collateral attack,* as distinguished from the unique exception adopted by this court, were held applicable. It was therein said:

"Does a United States District Court for the proper district, in a suit brought by the United States (the defendant having been brought into court by proper process) have jurisdiction to determine whether a deed of an Indian allottee was made and delivered in violation of restrictions imposed by Congress? That such a question is a proper one for judicial inquiry and that a United States District Court for the proper district has jurisdiction in such a case is conclusively settled by an unbroken line of authorities. Heckman v. United States, 224 U. S. at pages 428-445, 32 S. Ct. 424, 56 L. Ed. 820; La-Motte v. United States, 254 U. S. 570, 575, 41 S. Ct. 204, 65 L. Ed. 410; Mars v. McDougal (C.C.A. 10) 40 F. (2d) 247, 248; Ledbetter v. Wesley (C.C.A.) 23 F. (2d) 81, 86; Bowling v. United States, 233 U. S. 528, 534, 34 S. Ct. 659, 58 L. Ed. 1080; section 41, title 28, U. S. C. (28 U.S.C.A. para. 41). *Such jurisdiction includes the power to determine the question presented erroneously as well as rightly.* Ex parte Moran (C.C.A. 8) 144 F. 594; Jack v. Hood (C.C.A. 10) 39 F. (2d) 594. In applying the doctrine of estoppel by

judgment, it is immaterial that the judgment *which works it may have been erroneous, that the court may have been mistaken in the facts; may have misconceived the law, or may have disregarded the public policy of the nation when it rendered it,* if the court had jurisdiction of the subject matter of, and the parties to, the action in which such judgment was rendered. Such a final judgment on the merits, in an action between the same *parties or between those in privity with them upon the same claim or demand, is conclusive whether right or wrong, not only as to every matter offered in the former action* but as to every admissible matter which might have been offered to sustain the claim. Swift v. Jackson (C.C. A. 10) 37 F. (2d) 237, 240, 241." (Emphasis ours.)

—and:

"A valid judgment on the merits, rendered by a court of competent jurisdiction in a former suit between the same parties or their privies, operates, in a subsequent suit on the same cause of action, as an estoppel not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other admissible matter which might with propriety have been offered for that purpose."

See, also, Fulsom et al. v. Quaker Oil & Gas Co. et al., 35 F. 2d 84; Mars et al. v. McDougal et al., 40 F. 2d 247; and Doran v. Kennedy, 237 U. S. 362, 35 S. Ct. 615, 59 L. Ed. 996.

I do not wish to be understood to assert that all collateral inquiry into questions of fact are foreclosed by a final judgment. There are some exceptions to the rule. Some questions of fact are strictly jurisdictional, and as to those questions, subsequent investigation on collateral attack may destroy the judgment. Noble v. Union Logging Railroad Co., 147 U. S. 165, at page 173 et seq., 13 S. Ct. 271. However, the federal court, upon consideration of the force of federal statutes, has definitely declined to classify the type of question involved in the case at bar as strictly jurisdictional from a judicial standpoint. Vinson et al. v. Graham et al., supra. Our decisions, insofar as they conflict,

give a different and added effect to the federal legislation, for there is nothing in the acts of Congress which commits the exclusive power to judicially decide such questions to the federal courts as distinguished from the state courts. Consider the decision in Fulsom et al. v. Quaker Oil & Gas Co., supra.

The instances in which this and other state courts have judicially determined questions relating to restrictions upon the alienation of Indian lands are legion. In this connection and upon this basis a vital distinction may well be said to exist between the case at bar and the case of Naharkey v. Sand Springs Home, 177 Okla. 371, 59 P. 2d 289. That case is cited in the majority opinion. There the judgment reviewed was one undertaking to partition restricted Indian lands which the court did not possess the judicial power to do; whereas, in the case at bar the action is to foreclose a mortgage, which connotes the power to decide whether the alleged mortgage should be foreclosed or not. This is a judicial power which the trial court clearly possessed, and the question of the validity of the mortgage presents a matter to be decided in the exercise of that jurisdiction.

The majority of my associates, after reviewing the federal decisions herein mentioned, have concluded that upon analysis of the particular facts in each case harmony can be said to exist between the federal and state decisions. However, the conclusion thus announced does not appear to be sufficiently certain to constitute the basis of the decision, for the Enabling Act is then invoked with the apparent purpose of justifying the existence of a difference, which according to the first announced conclusion did not exist.

Nor do I entertain the view that the quoted portion of the Enabling Act operates to withhold judicial power from the courts of the state. It does not pretend to do so, and no logical reason can be advanced why by implication it should be interpreted as a greater diminution of normal state sovereignty than its plain wording in-

dicates. It announces and preserves the right of Congress to legislate on Indian affairs. That is a reservation of legislative power, as distinguished from judicial authority, and even though it may be urged arguendo that Congress could have withheld from the state courts the power to judicially apply acts of Congress relating to Indians to fact situations, Congress has made no general attempt to so limit the power of the judicial branch of the state government, and there is no specific legislation dealing with the particular judicial question here involved.

The fact that Congress has, for certain purposes, designed certain state courts to act in a capacity comparable to federal administrative agencies exercising quasi-judicial power does not connote a contraction of the judicial power of state courts of general jurisdiction.

Upon the foregoing considerations, I am impelled to conclude that the result announced by my associates is erroneous, and I therefore respectfully dissent.

I am authorized to state that Mr. Justice GIBSON concurs in the above views.